71 So.2d 520

**ALEXANDER v. STATE.**

8 Div. 336.

Court of Appeals of Alabama.

March 23, 1954.

Roberts & Wright, Gadsden, Scruggs & Scruggs, Guntersville, for appellant.

Si Garrett, Atty. Gen., L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge

This appellant was indicted for murder in the first degree of James Sparks. After completion of the evidence the court submitted to the jury only the charges of murder in the second degree, and the two degrees of manslaughter.

The jury returned a verdict finding the appellant guilty of manslaughter in the first degree, and fixed his punishment at imprisonment for three years.

To establish its case the State relied entirely upon certain statements made by the accused after the homicide.

Mr. Howard B. Hardin, Chief Deputy Sheriff of Marshall County since July 1952, and for five years prior to that time Coroner, testified that on the night of the homicide he met the appellant in response to a telephone call by the appellant. They then went to the Sheriff's office.

After proper predicate as to voluntariness had been laid, this witness testified that on this occasion the appellant told him that he had shot James Sparks.

Thereafter, accompanied by the coroner, Mr. Hardin went to the appellant's home, the scene of the shooting. On the way there they stopped at the home of Mack Gilbreath. The appellant's wife was at Gilbreath's. She turned over to the officer a .410 guage bolt action shotgun, being the weapon used in the shooting. Appellant's wife accompanied the officers on to the scene.

There they found the deceased's automobile parked almost directly in front of appellant's home, about twenty feet from the front steps. The body of James Sparks, lying on its back, was found immediately in front of the automobile.

Two wounds were observed on the body, one about six inches in area on the right side, and another on the left side, this wound being a small hole with accompanying powder burns on the flesh. No weapon was found on or near the deceased.

After first testifying that as coroner, and as deputy sheriff, he had examined the bodies of several people and had observed the effects of gunshot wounds, and had seen guns fired and knew about what distance a gun would make powder burns on a body and on clothing, Deputy Hardin was permitted to testify over appellant's objection as to his qualification as an expert, that in his judgment the gun would have had to be within one or two feet of Sparks at the time it was fired in order to make powder burns on the body through the clothing.

Deputy Hardin also further interviewed the appellant the next morning. The required predicate of voluntariness being established, Deputy Hardin testified that on this occasion the appellant told him that "his wife went outside. He heard her holler and he grabbed his gun and went out there and saw the man holding her and he shot him."

On cross-examination Hardin testified that in his interviews with appellant the appellant had told him that his wife had left the house to answer a call of nature. At the time he heard her call he was lying on a bed. He jumped up, grabbed the gun and ran out of the house. Seeing a man holding his wife he fired once when he reached the bottom of his porch steps, and the second shot as he was moving toward the man. He then ran back in the house for more shells. When he returned he found the man laying on the ground and, holding the gun ready, he had his wife see who it was. He and his wife then left for a neighbor's and he contacted the Sheriff by phone.

Deputy Hardin further testified that when he arrived at the appellant's home on the night of the shooting the lights on Sparks' automobile were still burning.

Russell Cowen, a witness for the State, testified that he met the appellant and his wife in Guntersville about 10 a. m. on the day of the shooting. These three apparently remained together during the day and late in the afternoon they went to appellant's home. Around 5 p. m. the deceased and A. G. Barkley arrived in deceased's car.

All of the party began drinking. After about an hour and a half the appellant and his wife and the deceased left appellant's home, the deceased stating they were going to get more whiskey.

Cowen and Barkley remained at appellant's home about twenty minutes after the others had departed when they too left. Neither knew anything about the actual shooting.

Mrs. Lessie Williams, a witness for the State, testified that between 7:00 and 8:00 p. m. on the night of the shooting the deceased and appellant came to her house and talked to her husband.

Sheriff J. M. Camp, of Marshall County, was a witness for the State. His testimony concerned the statements made by accused after the homicide. His testimony sheds no light on the issues not already shown by Mr. Hardin's testimony, and we will not set it forth in detail. Mr. Camp did testify however that the appellant had stated that he had not seen the deceased on the day of the shooting. He further testified that the appellant had stated that after the first shot he kept going and fired the second shot close to deceased.

Several of the witnesses for the State testified on cross examination that appellant's wife was complaining on the night of the shooting and a leg and arm appeared swollen.

The appellant presented only one witness in the trial below. Dr. W. R. Huckaby testified that he saw appellant's wife on the day after the shooting. At that time she had a number of discolored spots on her thighs. She was limping and had some swelling in one wrist and one ankle was swollen quite a bit.

■ No error resulted from the court's ruling in permitting Deputy Hardin to testify as to his judgment of the distance of the gun from the deceased at the time the powder burned wound was inflicted.

■ The criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject should have acquired a knowledge beyond the ordinary witness. Scott v. State, 34 Ala.App. 18, 37 So.2d 670; Daniel v. State, 31 Ala.App. 376, 17 So.2d 542. The question of a witness' qualifications to testify as an expert is a matter largely within the discretion of the trial court. See 6 Ala.Dig., Crim.Law, ☞481 for innumerable authorities.

We find no abuse of discretion in this instance in view of Mr. Hardin's testimony to the effect that he had been coroner of Marshall County for five years, and a deputy sheriff since 1952, during which tenures he had examined human bodies, had seen guns fired, observed the effects of gunshot wounds on human bodies, and knew what distance gun fire would make powder burns on bodies and clothing.

■ It further appears that the appellant had stated he had fired the second shot

when close to the deceased. We do not see therefore that Mr. Hardin's testimony could have exerted any prejudicial influence in any event. Sup.Ct.Rule 45, Code 1940, Tit. 7 Appendix.

Counsel for appellant contends that the lower court erred in refusing appellant's request for charges affirmative in nature as to the respective degrees of homicide, and in denying appellant's motion for a new trial because of the insufficiency of the evidence to support the judgment.

■ Every killing is unlawful unless expressly excused, or justified by the law. A homicide being shown, it is incumbent upon the defendant to prove circumstances in mitigation, excuse, or justification, unless shown by the evidence produced by the State. The validity of the excuse, the degree of mitigation, or justification are questions for the jury. Champion v. State, 35 Ala.App. 7, 44 So.2d 616.

■ Under this principle, and the tendencies of the State's evidence, we cannot say the jury was unauthorized in finding the verdict it did find.

No mitigating factors were attempted to be shown by the appellant. The only mitigating factor deducible from the State's evidence is the fact that after appellant's wife called out he saw some man holding her. Clearly whether this justified appellant in shooting the man was a question solely for the jury to decide. No evidence was produced by the defense as to the nature of this struggle, or its seriousness. The fact that appellant's wife received some injuries at some time prior to the shooting sheds no light on the issues since resort to speculation and surmise must be had in the absence of any testimony as to how she received her injuries. Particularly is this true in light of the evidence that the parties, including appellant's wife, had been drinking for some time during course of the afternoon.

■ The court therefore did not err in refusing appellant's request for charges affirmative in nature, nor in refusing appellant's motion for a new trial on grounds questioning the sufficiency of the evidence to support the verdict.

■ No error resulted in permitting the witness Hardin to testify as to appellant's confessory statements, even though these statements were taken down in writing and signed by the appellant during or just after they were made. Both the written statement, and the oral statement of the witness who hears a confession made, are primary evidence, and as such each is admissible. Elkins v. State, 250 Ala. 672, 35 So.2d 693; Gordon v. State, 252 Ala. 492, 41 So.2d 610.

■ Counsel for appellant argues that in proving the oral statement the State failed to show its full contents, but only a part thereof. So far as appears from the record the entire statement made by the appellant was fully before the jury, either through the direct examination of Hardin, or through his cross examination. It further appears that counsel for the defense objected to Hardin's testimony as to the oral statement on the grounds that a written statement was in existence. This objection was without merit, as shown above. However the State then offered the written statement in evidence. Defense counsel's objection to this offer was sustained by the court. Appellant is in no position to complain as to this ruling.

■ Objections to the testimony of the witness Cowen to the effect that he met the appellant and his wife in Guntersville around 10 o'clock in the morning and later went with them to appellant's home in a taxi might well have been sustained as being immaterial to the issues. Likewise the objections to the testimony of Cowen and Barkley to the effect that after leaving appellant's home some 15 or 20 minutes after the appellant, his wife, and deceased had departed they had walked some two miles to a store. Regardless we fail to see how appellant's substantial rights could probably have been injured by such innocuous evidence. Sup.Ct.Rule 45.

■ For the same reason, we will not base a reversal of this cause on the court's

refusal to exclude the testimony of State's witness Jake Kreis. Mr. Kreis, a State Investigator, merely testified that in his investigation of this case he had not discovered any eye witnesses; that in the course of his investigation he had talked to Sheriff Camp and Deputy Sheriff Reynolds, but had not talked to the defendant.

Furthermore, it appears that appellant's motion was to exclude "everything he said." At least some parts of the testimony of Mr. Kreis were admissible at the time they were offered. A general motion to exclude all of his testimony, where a part was admissible, was therefore denied without error.

In his argument in support of the contention that the court erred in overruling his objections to certain remarks by the Solicitor in his argument to the jury, appellant's counsel states: "It appears that the county solicitor attempted to prejudice the jury by arguing to them that the defendant was a bootlegger."

An examination of the record shows that the remarks were to the effect that the appellant had furnished whiskey on the occasion of the killing. Liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury. Mississippi Fire Ins. Co. v. Perdue, 217 Ala. 292, 116 So. 142, 62 A.L.R. 626. In view of the testimony of Cowen and Barkley to the effect that neither of them carried any whiskey to appellant's home, and that they did not see the deceased bring any, we think the Solicitor was within the bounds of allowable arguable inferences deducible from the evidence in these instances.

Appellant's refused charges 15, 16, 17, 18, 19, and 20, being affirmative in nature were properly refused under the developed evidence.

Charge 21 was properly refused under the authority of Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814.

The principles sought to be enunciated in refused charges 22, 23, 25, 26, 27, 28, and 29 were covered in a clearer fashion in the very adequate oral charge of the court, or other charges given at appellant's request. No error resulted in the refusal of these charges.

Charge 24 was properly refused because argumentative, invasive of the province of the jury, and not predicated on belief from the evidence.

Affirmed.